IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


David Carson,

            Plaintiff,                    Case No. 2:08-cv-00653

v.                                        JUDGE GRAHAM

Patterson Dental Supply, Inc.,           MAGISTRATE JUDGE ABEL

            Defendant.



OPINION AND ORDER


I.  Introduction

    This action is before the court on defendant's motion for
summary judgment pursuant to Rule 56(c) of the Federal Rules of
Civil Procedure.   Plaintiff's complaint alleges that defendant
terminated his employment on the basis of race in violation of Ohio
Rev. Code §§ 4112.02 and 4112.99, and that defendant engaged in
wage discrimination on the basis of race in violation of Ohio Rev.
Code § 4111.17.   During the pendency of the briefing regarding
defendant's motion for summary judgment, plaintiff filed a motion
to compel discovery and request for continuance of summary judgment
proceedings.   That motion was denied on September 25, 2009.  (Doc.
No. 31).   Defendant's motion for summary judgment has been fully
briefed and is now ripe for this court's disposition.   For the
reasons that follow, the court GRANTS defendant's motion for
summary judgment.


II.  Factual Background

On March 19, 2007, plaintiff began working as the branch operations manager for defendant's Columbus, Ohio branch office, located in Dublin, Ohio. Plaintiff's responsibilities as branch operations manager included general ledger reconciliation, accounts payable reconciliation, examining journal entries and invoices, and purchasing items for the branch, such as tools or supplies. Plaintiff also served as the branch authority on company policies and procedures.

Plaintiff was provided with two credit cards in connection with his employment as a manager with defendant, a "P-card" and a corporate American Express card. Plaintiff used these cards to purchase items for the branch as well as for business travel and entertainment expenses. Defendant was billed directly for charges made with the P-card. The American Express card, however, was in plaintiff's name, and he was billed monthly for the charges he incurred with this card. To obtain reimbursement for the charges on the American Express card, plaintiff would submit expense reports, which were approved by his supervisor and then by someone at defendant's central corporate office. Because charges made with the P-card were billed directly to defendant, it was unnecessary for plaintiff to file an expense report in connection with its use.

To meet tool supply needs at defendant's branch offices, branch employees would purchase tools at local Lowe's or Home Depot stores. These employees would also order tools from Grainger Industrial Supply ("Grainger"). In 2007, defendant established a tool program with Grainger that enabled it to purchase tools at a discount. In connection with this program, defendant established one national account number, which ended with the digits 6693, and deactivated all then existing account numbers it had with Grainger.

Purchases made under this program were billed directly to the national account number. For example, in June 2007, one of plaintiff's associates at the Columbus branch purchased a vacuum pump from Grainger. The packing list received by defendant for this transaction indicates that the item was sold to "Patterson Dental Holdings, Inc." and identifies the buyer's account number as the number ending in 6693.[1] The invoice for this transaction shows that Grainger billed defendant's account number ending in 6693. As part of his duties as branch operations manager, plaintiff was required to reconcile a journal entry and the invoice for this purchase.

In late 2007, plaintiff was asked by service representatives for defendant to order tools and other items for the Columbus branch. Plaintiff understood that, because of advantageous pricing, ordering parts or tools from Grainger was preferred to purchasing these items at either Lowe's or Home Depot, especially when the items were not needed immediately. Grainger provides its customers with the option of purchasing tools on its Internet web site. One of plaintiff's predecessors, Kevin Henderson, had used the Grainger online ordering system and established a password which could be used to expedite future purchases. The Grainger password used by Henderson was left in a file in plaintiff's office.

Plaintiff used the Grainger online system, and the previously established password, to purchase items for defendant in two

---

[1]Although the record is silent as to the precise relationship between "Patterson Dental Holdings, Inc." and "Patterson Dental Supply, Inc.," the record shows that these entities had the same nine digit Grainger account number and thus were related in some capacity.

separate transactions in December 2007. The first transaction occurred on December 7, 2007. On the same day, plaintiff submitted an expense report regarding the transaction, requesting reimbursement for his reported payment of $270.12 to Grainger for tools. To document this purchase, plaintiff submitted printouts of the "Order Form" and "Checkout" pages on the Grainger web site reflecting the purchase. The order form printout shows the particular items that were purchased from Grainger. The checkout page contains a "delivery info" section and a "payment/billing info" section. The delivery information section of the printout identifies Kevin Henderson of Patterson Dental as the receiving party and identifies "UPS Ground" as the method of shipping. Under "shipping label/packing list" in the delivery information section, plaintiff was required to input a number as the "P.O. or AMEX™ Ref. #."[2] Plaintiff input his American Express card number as this number. However, he did not input any additional information associated with the card, such as his name as the cardholder, the expiration date for the card, or the security code on the back of the card. The payment/billing information section indicates that the payment method for the transaction was "My Grainger Account," which is identified as the default payment method. No other payment/billing information was provided in this section.

On December 12, 2007, plaintiff purchased additional items from Grainger. On the same day, plaintiff received an email confirming the order placed that day and the one placed on December 7, 2007. While the email names plaintiff as the contact person regarding the orders, it identifies "My Grainger Account," and the

---

[2] This terminology is not explained in the record.

corresponding account number ending with the digits 6693, as the method of payment for the transactions. Two days later, plaintiff submitted a second expense report indicating that he paid an additional $484.65 to Grainger for items he purchased for defendant. To substantiate this purchase, plaintiff only attached the Grainger packing list received with the purchased items. This document indicates that the items were shipped to "Patterson Dental Supply, Inc." at its Columbus branch, and were sold to "Patterson Dental Holdings, Inc." with a street address in Mendota Heights, Minnesota, but does not indicate the payment method for the purchases. This document identifies the number ending in 6693 as the "Grainger Account Number" associated with the purchases and plaintiff's American Express card number as the "PO Number." Plaintiff's requests for reimbursement were approved, and he was promptly paid the full amount reflected on these two expense reports relating to the Grainger purchases.

Although not submitted with the expense reports, other documents pertinent to these transactions were available to defendant and plaintiff in the weeks prior to plaintiff's termination from employment in February 2008. In addition to sending the packing list with the purchased items, Grainger sent an invoice copy showing that it billed "Patterson Dental," with the Grainger account number ending in 6693, for the $754.77 worth of items purchased by plaintiff. The invoice copy identifies plaintiff's American Express card number as the "PO Number." A general ledger journal entry posted January 26, 2008, shows that defendant's corporate office paid the total cost of the Grainger purchases, $754.77, directly to Grainger. Consistent with this entry, the general ledger dated February 4, 2008 shows that

defendant's corporate office paid the $754.77 directly to Grainger. Lastly, plaintiff's American Express card statement for December 2007 shows no transactions involving Grainger.

In late January or early February 2008, Polly Koch, the field operations manager assigned to the Columbus branch, discovered that defendant had paid plaintiff for the cost of the tools he ordered from Grainger even though defendant also directly paid Grainger for the tools. Koch discovered this issue when she looked into discrepancies in the branch's ledger in its electronic accounting system. On February 12, 2008, Koch brought this issue, along with other issues not pertinent here, to the attention of Tim Rogan, the regional manager, via email. Rogan forwarded the email to Abruzzo, who forwarded it to plaintiff on the same day. Plaintiff responded to the forwarded email on February 15, 2008, which was a Friday, stating, "Taking care of what I can today, but we need to talk about some of the other answers they are looking for..." Abruzzo responded that he and plaintiff could meet on Monday.

The following Monday, Abruzzo met with plaintiff and asked him why he would expense something that was directly billed to the company. Plaintiff responded that he needed to look into the matter further because he believed that he had paid for the items. This was the last discussion between Abruzzo and plaintiff regarding the issue prior to plaintiff's termination from employment with defendant.

Abruzzo learned further details regarding the matter, including the time-line of events, when he met with Rogan in Chicago on February 19, 2008. Rogan asked Abruzzo whether he needed assistance in dealing with the situation, and Abruzzo indicated that he did not. He and Rogan did not discuss whether to

terminate plaintiff, and Rogan did not instruct Abruzzo to fire him. After considering the fact that plaintiff submitted expense reports for the Grainger tool purchases, the existence of multiple "red flags" showing that plaintiff's American Express card was not charged in connection with these purchases, and plaintiff's delay in taking action to correct the situation, Abruzzo concluded that plaintiff had violated company policy prohibiting theft, deception, and dishonesty. See Abruzzo Dep. at 16. Consequently, Abruzzo terminated plaintiff's employment on February 25, 2008.

According to plaintiff's deposition testimony, he thought, at the time he placed the orders with Grainger, that he was using his American Express card to pay for the orders. Plaintiff testified that he realized that something was amiss when he paid the balance due on the American Express card in early 2008 but still had money in his personal bank account that he used in connection with American Express card purchases. When plaintiff was reimbursed for charges made to his American Express card, he would deposit these reimbursement funds in this account, and then promptly pay the monthly American Express card bill with these funds. Thus, it was unusual for plaintiff to have money remaining in this account after paying the monthly bill from American Express because it was his practice to pay the American Express bill with reimbursement funds, which thereby resulted in an account balance of zero.

Plaintiff testified that upon realizing he had extra money in the account, he immediately told Abruzzo that he had the extra money, and Abruzzo told him not to worry about it. Plaintiff could not recall exactly when this conversation occurred, but did testify that he thought it was in January 2008. See Carson Dep. at 219. According to plaintiff, he did not immediately check to see where

7

the money came from because Abruzzo told him not to worry about it, and he was terminated before he could explain the circumstances to Abruzzo. Abruzzo denied that plaintiff ever told him that he had extra money in his personal bank account.

Evidence in the record indicates that other employees at defendant's Columbus branch had not always followed company policy regarding the use of credit cards for company expenses, and that these employees were not terminated. Abruzzo recalled at his deposition that Bev Reeder, who had been the branch operations manager before Kevin Henderson, made a personal purchase with the company credit card. Reeder immediately discovered her mistake, but because the store could not reverse the transaction, she informed Abruzzo of the situation when she returned to the office. The necessary steps were taken to correct the mistake, and Reeder was not disciplined. In a similar situation, Steve Wilkins, a service technician, mistakenly used the company credit card for a personal purchase. Wilkins timely notified his supervisor of the mistake, the problem was corrected, and he was not disciplined. Additionally, Abruzzo admitted that he had made an error on an expense report by miscoding something. When his error was discovered, he corrected it. Abruzzo was not disciplined for his conduct.

III.  Summary Judgment Standard

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See <u>Daugherty v. Sajar Plastics, Inc.</u>, 544 F.3d

696, 702 (6th Cir. 2008); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993). The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case at issue, LaPointe, 8 F.3d at 378, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005); Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993). In response, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Thus, "[o]nly disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." Daugherty, 544 F.3d at 702 (quoting Anderson, 477 U.S. at 248).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. Daugherty, 544 F.3d at 702; Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law." <u>Anderson</u>, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Eastman Kodak Co. v. Image Technical Servs., Inc.</u>, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252; see <u>Dominguez v. Corr. Med. Servs.</u>, 555 F.3d 543, 549 (6th Cir. 2009).

IV.  Discussion

     a.  Race-Based Termination Claim

     Plaintiff alleges that he was terminated from employment on the basis of his race in violation of Ohio Rev. Code § 4112.02(A). When considering claims of employment discrimination brought under the Ohio Revised Code, the Supreme Court of Ohio has looked to federal case law interpreting the federal statutes that are analogous to the applicable Ohio statutes. <u>See Coryell v. Bank One Trust Co. N.A.</u>, 803 N.E.2d 781, 786 (Ohio 2004) (citing <u>Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.</u>, 575 N.E.2d 1164 (Ohio 1991). "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 153 (2000). To avoid summary judgment, plaintiff must provide direct or indirect evidence of discrimination. <u>Young v. Oakland County</u>, 176 F. App'x 644, 648 (6th Cir. 2006) (citing <u>Seay</u>

10

v. Tennessee Valley Authority, 339 F.3d 454, 463 (6th Cir. 2003)).

"Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (quoting Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999)). Indirect or circumstantial evidence is proof that does not on its face establish discriminatory animus but may permit a fact-finder to draw a reasonable inference that discrimination occurred. Wexler, 317 F.3d at 570 (citing Kline v. Tennessee Valley Authority, 128 F.3d 337, 348 (6th Cir. 1997)).

Plaintiff does not allege that there is direct evidence of unlawful discrimination; his claim is based on indirect evidence. When considering indirect evidence as it pertains to a disparate treatment claim brought under Ohio Rev. Code § 4112.02(A) the court must use the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Johnson v. University of Cincinnati, 215 F.3d 561, 572 (6th Cir. 2000); see Clay v. United Parcel Serv., Inc., 501 F.3d 695, 703 (6th Cir. 2007)("When, as is the case here, a plaintiff presents only indirect evidence of disparate treatment based on race, we analyze the claim under the McDonnell Douglas burden-shifting approach.").

A plaintiff relying on indirect evidence in support of a discrimination claim bears the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas Corp., 411 U.S. at 802. To establish a prima facie case, plaintiff must show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position;

11

and (4) he was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees. <u>Wright v. Murray Guard, Inc.</u>, 455 F.3d 702, 707 (6th Cir. 2006). Such proof "in effect creates a presumption that the employer unlawfully discriminated against the employee." <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981).

If a plaintiff presents evidence sufficient to establish a prima facie case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. <u>Burdine</u>, 450 U.S. at 253; <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802. To meet this burden, the defendant must set forth, by admissible evidence, reasons for its actions, "which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." (Emphasis sic.) <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507 (1993). This burden is one of production, not of persuasion, and can involve no credibility assessment. <u>Gee v. Liebert Corp.</u>, 58 F. App'x 149, 156 (6th Cir. 2003). If the defendant meets this burden, the presumption of discrimination "falls away" and the burden of production shifts back to plaintiff to demonstrate that defendant's articulated reason is merely a pretext for unlawful discrimination. <u>Burdine</u>, 450 U.S. at 253; <u>McDonnell Douglas Corp.</u>, 411 U.S. at 804; <u>Wright</u>, 455 F.3d at 706-07.

A plaintiff can show pretext in three interrelated ways: (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the employer's action, or (3) that it was insufficient to motivate the employer's action. <u>Chen v. Dow Chem. Co.</u>, 580 F.3d 394, 400 (6th Cir. 2009)(citing

12

<u>Hedrick v. W. Reserve Care Sys.</u>, 355 F.3d 444, 460 (6th Cir. 2004)); <u>Manzer v. Diamond Shamrock Chemicals Co.</u>, 29 F.3d 1078, 1084 (6th Cir. 1994).  The first type of showing consists of evidence that the proffered basis for the discharge never happened, i.e., that it was "factually false." <u>Manzer</u>, at 1084.  Under the second showing, the plaintiff, while admitting the factual basis underlying the employer's proffered explanation and further admitting that the proffered reason would be sufficient to motivate an adverse employment action, produces circumstantial evidence tending to show that "an illegal motivation was *more* likely than that offered by the defendant." (Emphasis sic.) <u>Id.</u>  The third showing consists of evidence that similarly situated persons not in the protected class were better treated.  <u>Id.</u>

The Sixth Circuit has cautioned that, in applying this three-part test, a court should "avoid formalism in its application, lest one lose the forest for the trees." <u>Chen</u>, 580 F.3d at 400, n.4. Ultimately, to raise a question of fact as to pretext, the plaintiff must produce sufficient evidence from which the jury could reasonably reject the employer's explanation for the challenged adverse employment action.  <u>See</u> <u>id.</u>; <u>Braithwaite v. Timken Co.</u>, 258 F.3d 488, 493-94 (6th Cir. 2001).  Thus, if a jury could not reasonably doubt the employer's explanation, based on the evidence presented, summary judgment in favor of the employer is proper.  <u>Chen</u>, 580 F.3d at 400, n.4.

Plaintiff argues that he has established a prima facie case as to his race-based termination claim.  Plaintiff, an African-American, alleges that, for the same or similar conduct, he was treated differently than similarly-situated non-minority employees. More particularly, plaintiff alleges that Caucasian employees Bev

13

Reeder and Ryan Guark were treated better than him when the employees were disciplined for performance related issues as branch operations managers. Plaintiff also alleges that Reeder, and other Caucasian employees, particularly Abruzzo and Steve Wilkins, were treated better than plaintiff as it concerned mistakes on expense reports or alleged violations of company policies and practices relating to company expenses. Defendant challenges these allegations. Defendant contends that plaintiff has presented no evidence that similarly situated employees outside his protected class were treated more favorably than he was.

To be a "similarly situated" employee, the comparative employee "must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998). To satisfy this requirement, it must be shown that the comparable employee is similar "in all of the *relevant* aspects." (Emphasis sic.) Id.

Here, plaintiff has not shown that his conduct was substantially similar to the conduct of the other named employees. Plaintiff argues that he was treated differently than Reeder and Gaurke because they were demoted, and not terminated, from the position of branch operations manager as a result of not effectively performing their duties as managers. However, defendant asserts that plaintiff was terminated for retaining funds that were not rightfully his, not due to any performance related problems he may have had. There is no evidence that either Reeder or Gaurke was accused of submitting an expense report for a payment

14

never made, and then delaying any repayment to defendant despite the receipt of documents that would have alerted a reasonable person to the impropriety of the reimbursement request. Moreover, although plaintiff is correct that evidence shows that Reeder used the company credit card for a personal purchase, and that she was not terminated or disciplined as a result of the improper use of this card, the evidence further indicates that she immediately went to her supervisor and told him about the situation in order to correct the mistake. Similarly, Wilkins allegedly used his company credit card, instead of his personal credit card, to purchase gasoline for his vehicle. He immediately realized he had used the wrong card, which was the same color as his personal credit card, and brought the matter to the attention of plaintiff, who was Wilkins' supervisor, to correct the situation. Lastly, even though Abruzzo admitted that he miscoded something on an expense report, he also corrected the mistake when it was discovered.

Plaintiff's conduct was materially different from the conduct of other employees, who were not terminated. Plaintiff submitted expense reports for expenses he did not incur. While plaintiff alleges that he told Abruzzo that he had extra money in his personal bank account, this statement was made weeks after the expense reports were submitted. Moreover, plaintiff did not suggest to Abruzzo that the extra money in his personal bank account was there due to reimbursement for expenses he did not incur. At the time plaintiff allegedly told Abruzzo that he had extra money in his personal bank account, documents relating to the Grainger purchases would have alerted a reasonable person that his American Express card was not charged for these purchases. For example, the email plaintiff received confirming the Grainger

15

purchases shows that defendant's Grainger account, identified by the number ending in 6693, was the method of payment for the purchases.[3] Despite what is shown by these documents, plaintiff did not disclose the source of the extra money, and he retained the money until after he was fired. Plaintiff has not presented evidence that another employee engaged in the same or substantially similar conduct as him. Consequently, plaintiff has failed to demonstrate that similarly situated employees were treated more favorably than he. But this does not end the analysis of whether plaintiff has presented a prima facie case of race discrimination.

Plaintiff alternatively argues that he has established a prima facie case of discrimination because he was replaced by a Caucasian. Indeed, evidence in the record indicates that plaintiff is African-American, that he was terminated from employment with defendant, that he was qualified for the position, and that he was replaced by Tim Compton, a Caucasian. Therefore, plaintiff has established a prima facie case of race discrimination. See Wright, supra.

Defendant argues that, assuming plaintiff has presented a prima facie case, it has articulated a legitimate, nondiscriminatory reason for firing plaintiff, and that plaintiff cannot show that its reason for terminating him was pretextual.

The court agrees that defendant has met its burden of presenting evidence of a legitimate, nondiscriminatory reason for the adverse employment action. Defendant has produced evidence indicating that defendant terminated plaintiff for violating

_____

[3]The documents relating to the Grainger purchases will be more fully discussed below in the context of the court's analysis of whether plaintiff has demonstrated sufficient evidence of pretext.

company policy that prohibits theft, deception, and dishonesty. According to defendant, plaintiff improperly sought, obtained, and retained payment for an expense that he did not incur. More particularly, evidence indicates that plaintiff submitted expense reports for the purchase of items that were not charged to his American Express card, that plaintiff received payment from defendant for these purchases, and that, despite having access to multiple documents showing that he was not charged in connection with the purchases, plaintiff did not remedy the situation. From defendant's perspective, plaintiff acquired and retained company funds that were not rightfully his, in direct violation of company policy prohibiting theft, deception, and dishonesty. Thus, defendant has articulated a legitimate, nondiscriminatory reason for the adverse employment action.

Because defendant has presented evidence of a legitimate, nondiscriminatory reason for firing plaintiff, the burden shifts to plaintiff to produce sufficient evidence from which a jury could reasonably reject defendant's explanation for why it terminated him.

Abruzzo decided to fire plaintiff after he considered the "red flags" that should have informed plaintiff that his American Express card was not charged for the Grainger purchases, as well as plaintiff's retention of the money defendant incorrectly paid him. All the documents in the record that were generated in connection with plaintiff's purchases of items from Grainger show that defendant, not plaintiff, was billed for the Grainger purchases. The "checkout" document plaintiff submitted with one of his expense reports indicates that the payment method was "My Grainger Account," which was the default payment method. It is undisputed

17

that, at the time plaintiff purchased the items from Grainger, defendant had one national account with Grainger, and that this account was identified by the number ending in 6693. Additionally, there is no suggestion that plaintiff or plaintiff's predecessor, Kevin Henderson, had his own account number with Grainger. Thus, the reference to "My Grainger Account" can be viewed only as a reference to defendant's established account with Grainger, identified by the number ending in 6693. The packing list plaintiff submitted in support of his second reimbursement request indicates that the purchased items were sold to "Patterson Dental Holdings, Inc." The email plaintiff received that confirmed the Grainger purchases shows that the means of payment for these purchases was "My Grainger Account," identified by the number ending in 6693. The journal entry for the purchases, which plaintiff was required to review as part of his managerial duties, shows that defendant's corporate office was billed for the purchases. Finally, plaintiff's American Express bill covering the pertinent time period does not reflect any Grainger activity.

In opposing defendant's motion for summary judgment, plaintiff does not argue that the above-described documentation relating to the Grainger purchases inaccurately reflects the information before defendant at the time he was fired, or that the documentation does not demonstrate that defendant, and not plaintiff, was billed for the Grainger purchases. In other words, plaintiff does not argue that the proffered reason for his termination had no basis in fact. See Chen, supra. However, according to plaintiff, he has presented evidence showing that defendant's proffered reason did not actually motivate his discharge and that similarly situated persons not in the protected class were better treated.

Plaintiff argues that he simply made a mistake in believing that his American Express card was charged in connection with the Grainger purchases, and that he was not trying to improperly obtain money from defendant when he submitted the expense reports. Additionally, plaintiff suggests that he should not have been blamed entirely for the mistake, because his supervisor, Abruzzo, approved the expense reports and allegedly told plaintiff not to worry about the extra money in his personal bank account. Plaintiff also cites evidence of the use of racially offensive language, by unidentified persons, at the Columbus office, in an attempt to show that it was more likely than not that the employer's reason for the termination was pretextual. Lastly, plaintiff argues that defendant's explanation for his firing was pretextual in view of the evidence showing that, unlike other employees, he was fired for making an expense report mistake before he was provided the opportunity to correct the mistake, or at least explain the circumstance.

The ultimate issue here is not whether it was actually plaintiff's intent to obtain and retain money that was not rightfully his. The issue is whether plaintiff was the victim of intentional discrimination when he was terminated from employment. See Reeves, supra. In this case, resolution of this issue requires an analysis of whether plaintiff has demonstrated the existence of a genuine issue of material fact as to whether the defendant's proffered reason for his termination was pretextual. For the following reasons, the court finds that the evidence cited by plaintiff does not provide a sufficient basis for a trier of fact to reject defendant's nondiscriminatory explanation.

For the purpose of ruling on this motion, the court assumes

that plaintiff told Abruzzo in January 2008 that he had extra money in his personal bank account, and Abruzzo told him not to worry about it. Subsequently, however, on February 12, 2008, nearly two weeks before plaintiff was terminated, Abruzzo sent an email to plaintiff that specifically asked why plaintiff had submitted an expense report for items purchased from Grainger when Grainger directly billed defendant for these items. Thus, while plaintiff claims that he did not determine the source of the extra money in his personal bank account due to Abruzzo's statement to him to not worry about it, plaintiff was indisputably alerted to his employer's specific concern that he had improperly sought reimbursement for Grainger purchases. Despite meeting with Abruzzo the following week to address the matter, and despite plaintiff's access to the documents showing that his American Express card was not charged for the Grainger purchases, plaintiff took no action to correct the impropriety. Therefore, the court finds that the evidence that Abruzzo told plaintiff in January 2008 not to worry about the extra money in his account would not provide a sufficient basis for a trier of fact to reject defendant's nondiscriminatory explanation for terminating plaintiff's employment on February 25, 2008.

Plaintiff's reference to the evidence relating to the action, or non-action, taken against others for their conduct is also unavailing. Unlike plaintiff, those employees self-reported their mistakes and/or took immediate action to correct them. As discussed above, plaintiff has not presented evidence that another employee engaged in the same or substantially similar conduct as him. Thus, the evidence cited by plaintiff does not demonstrate that defendant's reason was pretext.

Finally, plaintiff's reference to evidence that unidentified employees at the Columbus office used racially offensive language does not create a genuine issue of material fact. This evidence provides no specificity as to who used the racially offensive language, and plaintiff has not cited any evidence that Abruzzo, Rogan, or Koch, ever used racially offensive language. Thus, plaintiff's reference to this evidence does not create an issue of fact for the simple reason that to attribute the offensive language to the decision-maker would amount to speculation.

Defendant argues that plaintiff's claim fails because the same person hired and fired him. The Sixth Circuit has endorsed the so-called "same-actor inference," which permits an inference of a lack of discriminatory animus where the same person is responsible for both hiring and firing the individual. Buhrmaster v. Overnite Transp. Co., 61 F.3d 461, 463 (6th Cir. 1995). This principle is grounded in the idea that there is inherent dissonance in a decision-maker hiring someone and then shortly thereafter firing that person on the basis of the person's age, race, or some other protected classification. See, e.g., Wofford v. Middletown Tube Works, Inc., 67 F. App'x 312, 318 (6th Cir. 2003)(finding that if the defendants "had despised [the plaintiff] because of the color of his skin, it seems odd that they would have hired him in the first instance only to fire him a few short months later").

The significance of the same-actor inference is not well-settled, especially in the context of a court resolving a motion for summary judgment. In Wexler, supra, the Sixth Circuit recognized a split in authority on this issue and decided to side with the circuits that "'have minimized the importance of the same-actor inference, emphasizing that although a court may infer

an absence of discrimination where the same individual hired and fired the plaintiff, such an inference is not required.'" <u>Mischer v. Erie Methodist Housing Authority</u>, 168 F. App'x 709, 714 (6th Cir. 2006)(quoting <u>Wexler</u>, 317 F.3d at 573). Upon reaching this decision, the Sixth Circuit specifically held that, although the same-actor inference is permissible, when the inference is drawn, "it is insufficient to warrant summary judgment for the defendant if the employee has otherwise raised a genuine issue of material fact." <u>Wexler</u>, 317 F.3d at 573-74. Thus, the court essentially "weakened" the same-actor inference in the context of a court resolving a motion for summary judgment. <u>See Mischer</u>, 168 F. App'x at 716, n.4. However, the court in <u>Mischer</u> noted that the same-actor inference remains "helpful" and "appropriate" in cases in which a plaintiff relies entirely on circumstantial evidence to demonstrate that a proffered reason for an adverse action is pretextual. <u>Id.</u>; <u>see Kyle-Eiland v. Neff</u>, No. 2:07-cv-750, 2009 WL 2047637 (S.D. Ohio July 6, 2009)(noting that, while it is not dispositive, the same actor inference is an additional factor to consider in the court's summary judgment analysis of a plaintiff's race discrimination claim).

Here, defendant has presented evidence that Abruzzo hired plaintiff and subsequently decided to fire him. It has also presented evidence that Abruzzo did not discuss with Rogan, Abruzzo's direct supervisor, the issue of whether to terminate plaintiff, and that Rogan did not instruct Abruzzo to terminate plaintiff. Plaintiff speculates that Koch and Rogan, but not Abruzzo, were actually the decision-makers. Plaintiff argues that email correspondence between Rogan and Koch demonstrates that Rogan was involved in the decision to terminate plaintiff,

notwithstanding Abruzzo's testimony that Rogan was not involved. Plaintiff also argues that Koch attempted to disparage his image in her communications with others. While email correspondence indicates Koch's displeasure with plaintiff's work, and that Rogan assured Koch that he was "addressing" plaintiff with Abruzzo "behind the scenes," these emails do not indicate that Rogan told Abruzzo to terminate plaintiff. Nor does this evidence, or any other evidence, show that Koch had any decision-making authority regarding plaintiff's termination.

Nonetheless, even assuming that it would be permissible, in the context of resolving defendant's motion for summary judgment, to infer from these facts that there was an absence of discrimination on the basis of race, the application of the same-actor inference in this case is unnecessary because plaintiff has failed to otherwise demonstrate a genuine issue of material fact as to whether defendant's proffered reason for terminating him was a pretext for race discrimination.

b. Race-Based Wage Discrimination Claim

Plaintiff asserts that he was the victim of race-based wage discrimination in violation of Ohio Rev. Code § 4111.17. In moving for summary judgment as to this claim, defendant argues that plaintiff has presented no evidence to support a wage discrimination claim. Ohio Rev. Code § 4111.17(A) provides in part that no employer "shall discriminate in the payment of wages on the basis of race ... by paying wages to any employee at a rate less than the rate at which the employer pays wages to another employee for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under

23

similar conditions." But nothing in Ohio Rev. Code § 4111.17 "prohibits an employer from paying wages to one employee at a rate different from that at which the employer pays another employee for the performance of equal work under similar conditions on jobs requiring equal skill, effect, and responsibility, when the payment is made pursuant to" a seniority system, merit system, a system which measures earnings by the quantity or quality of production, or a wage rate differential determined by any factor other than race, color, religion, sex, age, national origin, or ancestry. Ohio Rev. Code § 4111.17(B).

Claims under Ohio's version of the Equal Pay Act, Ohio Rev. Code § 4111.17, are subject to the same standards as are applied to claims under the federal statute. <u>Birch v. Cuyahoga County Probate Court</u>, 392 F.3d 151, 161 n.6 (6th Cir. 2004); <u>Creech v. Ohio Cas. Ins. Co.</u>, 944 F. Supp. 1347, 1353 (S.D. Ohio 1996)(citing <u>Stone v. Greater Cleveland Regional Transit Auth.</u>, 635 N.E.2d 1281, 1288 (Ohio Ct. App. 1993)). In order to establish a prima facie case as to his wage discrimination claim, plaintiff must show that he, as a member of a protected class, was paid less than employees who are outside the protected class "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar conditions." <u>See</u> Ohio Rev. Code § 4111.17(A); <u>Conti v. American Axle and Mfg., Inc.</u>, 326 F. App'x 900, 913-14 (6th Cir. 2009) (involving sex-based wage discrimination claim under the federal Equal Pay Act). "Equal work does not require that the jobs be identical, but only that there exist substantial equality of skill, effort, responsibility and working conditions." (Internal quotation marks omitted.) <u>Buntin v. Breathitt County Bd. of Educ.</u>, 134 F.3d 796, 799 (6th Cir. 1998).

Even though plaintiff has presented evidence of his race and the race of other employees of defendant, he fails to show the remaining elements of a prima facie wage discrimination case brought under Ohio Rev. Code § 4111.17.  Particularly, plaintiff fails to show that defendant paid him less than other employees for equal work.  As noted by defendant, the only evidence plaintiff cites in support of this claim is his deposition testimony indicating his belief that other branch operations managers earned higher salaries than him and that he would have obtained a bonus if he had not been terminated.  Plaintiff's belief that other branch operations managers were paid more than he was admittedly not based on any particular knowledge but on his "sense" of what their salaries were.  Furthermore, plaintiff simply speculates that he would have received a bonus had he not been terminated.  To survive a summary judgment motion, a plaintiff must put forward more than speculations or intuitions.  Frazier v. USF Holland, Inc., 250 F. App'x 142, 148 (6th Cir. 2007)(citing Mulhall v. Ashcroft, 287 F.3d 543, 551 (6th Cir. 2002)).  Thus, plaintiff has failed to demonstrate a prima facie case as to his claim of race-based wage discrimination.

In an effort to explain the deficiency in evidence concerning his wage discrimination claim as well as to prevent summary judgment as to this claim, plaintiff refers to his inability to obtain, through the discovery process, information concerning the salaries of certain other employees who work for defendant, as well as his intent to file a motion to compel discovery further detailing his inability to obtain certain requested information. In fact, the day after plaintiff filed his memorandum in opposition to defendant's motion for summary judgment, he filed a motion to

compel discovery and request for continuance of the summary judgment proceedings. On September 25, 2009, the court denied plaintiff's motion, finding that plaintiff was not entitled to an order compelling discovery. The court consequently also denied plaintiff's request to continue the summary judgment proceedings. In denying the motion, the court noted that the magistrate judge previously denied plaintiff's oral motion to compel discovery and that plaintiff did not timely object to the magistrate judge's order denying the motion. The court resolved that, even if plaintiff's challenge to the magistrate judge's decision was not barred by the operation of the waiver doctrine, plaintiff's motion was meritless because his discovery requests at issue did not conform with the Federal Rules of Civil Procedure and thus defendant did not wrongfully refuse to comply with these requests. See Doc. No. 31. Therefore, plaintiff's reference to his attempt to obtain additional discovery is unavailing for purposes of resolving defendant's pending summary judgment motion.

V.  Conclusion

    For the foregoing reasons, the court finds that no genuine issue of material fact exists and that defendant is entitled to judgment as a matter of law as to both of plaintiff's discrimination claims. Accordingly, the court GRANTS defendant's motion for summary judgment (Doc. No. 21). The clerk shall enter final judgment in favor of defendant dismissing plaintiff's complaint with prejudice at plaintiff's cost.

It is so ORDERED.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

Date: December 1, 2009